IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**MARK GILBERT RIMBERT, individually,
and as Personal Representative of the Estates
of GILBERT JOHN RIMBERT, and
OLIVIA ACOSTA RIMBERT, deceased,**

      Plaintiff,

vs.                                                          No. CIV 06-0874 JCH/LFG

**ELI LILLY AND COMPANY,**

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's *Motion for New Scheduling Order* [Doc. 152], filed July 24, 2009. This motion seeks to enable Plaintiff to find and substitute a new expert, substantially after the deadline for disclosure of experts and production of Rule 26 reports, as a result of this Court's ruling that Plaintiff's initial expert must be precluded from testifying because her opinion is not the product of a reliable methodology. *See* Memorandum Opinion and Order on *Daubert* Issue (hereinafter "*Daubert* opinion") [Doc. 151], filed July 21, 2009. After carefully reviewing the motion, briefs, and case law, and being otherwise fully informed, the Court finds that Plaintiff's motion for a new scheduling order to enable him to name a new expert is not well taken and will be denied. As a result of this denial, Plaintiff does not have an expert witness to testify on causation. Therefore, the Court will also grant Defendant's *Motion for Summary Judgment Based on Lack of Admissible Expert Testimony* [Doc. 67].

## BACKGROUND

This case has had a long and convoluted procedural history, and its factual background is explained in great detail in this Court's *Daubert* opinion [Doc. 151] at pp. 2-6. In short, however, this is a products liability, personal injury, and wrongful death suit brought by Plaintiff against Eli Lilly, the maker of Prozac, alleging that Prozac caused Plaintiff's father to kill himself, his wife, and his dog. *See* Complaint [Doc. 1]. Plaintiff designated Dr. Grace Jackson as an expert on "general and specific causation as well as Eli Lilly's failure to warn and/or appropriately test [Prozac]." *See* Plaintiff's Expert Disclosure, attached as Exhibit K to Defendant's Memorandum in Support of Motion for Summary Judgment on All Claims [Doc. 56] at 1. Defendant moved the Court to exclude Dr. Jackson's expert report and testimony, arguing that Dr. Jackson's opinions fail the tests for reliability and relevance set forth by Rule 702 of the Federal Rules of Evidence; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-98 (1993); and *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 883-84 (10th Cir. 2005). *See* Defendant's Memorandum in Support of Motion to Exclude Testimony of Dr. Grace Jackson [Doc. 59] at 1. The prior trial Court held a *Daubert* hearing on May 16, 2008, at which the parties argued their respective positions regarding the admissibility of Dr. Jackson's testimony. *See* Transcript of May 16, 2008 Hearing [Doc. 103] at 85-178.

After the *Daubert* hearing, the prior trial court issued a Memorandum Opinion and Order on the issue of Dr. Jackson's report and ability to testify at trial. *See* Memorandum Opinion and Order, issued September 29, 2008 [Doc. 125]. That Court found that Dr. Jackson's opinions were based on a sufficiently reliable methodology, and so it denied Defendant's motion to exclude Dr. Jackson's testimony. Ten days after filing its *Daubert* ruling, the prior trial court recused itself and the case was transferred to this Court. Following the transfer to this Court,

Defendant filed a motion to have this Court take a fresh look at, *inter alia*, the prior *Daubert* ruling.  *See* Defendant's *Motion to Renew Dispositive and* Daubert *Motions or, in the Alternative, to Certify Orders for Interlocutory Appeal* [Doc. 136].  This Court then entered a Memorandum Opinion and Order holding that Dr. Jackson's expert opinion and testimony must be precluded because her opinion is not the product of a reliable methodology.  *See Daubert* opinion [Doc. 151].

Plaintiff admits that the Court's exclusion of his "sole expert witness sounds the death knell for [his] case" and that the exclusion of his expert means that his case "will not be able to continue."[1]  Plaintiff's Motion for New Scheduling Order (hereinafter "Pl. Mot.") [Doc. 152] at 6.  He therefore filed the current motion, seeking a second chance to attempt to find an expert to support his case.[2]  In arguing his request for time to find a new expert, Plaintiff mentions several times that the prior trial Court had ruled to allow Dr. Jackson's testimony before this Court ruled to exclude it.  The Court wants to make clear that, in deciding this motion, it conducted its analysis without taking into consideration the time that passed between the initial trial Court's ruling (September 29, 2008) and this Court's ruling (July 21, 2009).  In other words, the Court analyzed Plaintiff's motion as if it had ruled to exclude Dr. Jackson's testimony on the same date

---

[1] Defendant filed a Motion for Summary Judgment Based on Lack of Admissible Expert Testimony [Doc. 67] in conjunction with its motion to exclude Dr. Jackson's testimony.  Although the initial trial Court denied Defendant's motion to exclude Dr. Jackson's testimony, it appears that it never officially ruled on Defendant's motion for summary judgment on the grounds of lack of admissible expert testimony.  Thus, that motion is still pending with this Court.

[2] Although case management and scheduling orders generally fall within the responsibilities of a Magistrate Judge, because, as a practical matter, this motion is a request to substitute a new expert and a refusal to allow Plaintiff another chance to find a new expert would be case dispositive, this motion must be decided by the trial Court.

that the initial trial Court gave its ruling, so as to ensure that Plaintiff is not unfairly prejudiced by the Court's vacating of the prior trial Court's ruling. It is only because it concludes that Plaintiff would not have been eligible to add a new expert on September 29, 2008 that the Court now denies Plaintiff's motion.

## ANALYSIS

### A. Motion for New Scheduling Order

Plaintiff's argument that he should now be able to find a new expert, after the exclusion of his initial expert, rests almost entirely on *Summers v. Mo. Pac. R.R. Sys.*, 132 F.3d 599, 604-06 (10th Cir. 1999). In *Summers*, the Tenth Circuit reversed the district court's denial of the plaintiffs' motion for a new scheduling order as an abuse of discretion where the plaintiffs sought to add new expert witnesses after the court excluded two of the plaintiffs' proposed experts on *Daubert* grounds. While superficially similar, *Summers* does not mandate the result Plaintiff seeks in this case. Far from stating a broad new proposition that a party can always take another crack at finding a new expert if a court rejects its initial expert, the ruling in *Summers* is instead based on its "unique facts." 132 F. 3d at 605. Because the facts in *Summers* are so distinguishable from this case, *Summers* is not on point.

The *Summers* plaintiffs were two railroad employees claiming that they had suffered toxic exposure to diesel fumes. Upon being exposed to exhaust in the cab of the engine in which they were riding, the plaintiffs exited the train and sought medical care. They were referred *by the defendant* (their employer) to a Dr. Johnson. Another doctor to whom the defendant had referred plaintiffs, Dr. Chester, referred one of the plaintiffs to a Dr. Franks. Prior to trial, defendants moved to exclude the testimony of Drs. Johnson and Franks. Shortly after the trial court granted the defendant's motion, the plaintiffs filed a motion for a new scheduling order to

procure additional time to obtain further medical testimony.  Four days after filing their motion, the plaintiffs were examined by a Dr. Schreiber, and, approximately six weeks after the examination, filed Dr. Schreiber's report with the district court, as well as the reports of two other doctors.  Upon filing those reports, the plaintiffs requested that all three doctors be added to their witness list and that the court grant them an additional 90 days of discovery.  *See id.* at 602.  After receiving the three additional reports, the court denied the motion.  *See id.* at 605.  The court then held a jury trial at which the plaintiffs presented other evidence of causation, but not the additional medical testimony they had sought to present, and the jury found for the defendant.  Finding that the plaintiffs should have been allowed to add Dr. Schreiber to the witness list prior to trial, the Tenth Circuit remanded the case for a new trial.  *See id.* at 608.

      The current case differs significantly from *Summers*.  When the Tenth Circuit discussed the "unique facts" of *Summers* that merited its decision, it focused on the fact that the plaintiffs "were referred to Drs. Johnson and Franks by defendant, their employer" and found that because the plaintiffs' "disputed diagnoses were in part a function–albeit inadvertent–of defendant's actions," denying them the opportunity to acquire new experts prior to trial would be unjust.  *Id*. at 605.  In this case, Defendant clearly had no influence on Plaintiff's ill-fated choice of his excluded expert witness.  That fact alone distinguishes this case from *Summers*.

      Further influencing the Tenth Circuit's decision in *Summers*, and completely absent in this case, is the fact that the *Summers* plaintiffs "acted promptly to find new experts."  *Id*.  Before they knew whether their motion would be granted, the plaintiffs submitted to examination by a new doctor and, only six weeks after the motion was filed, submitted preliminary reports from their proposed witness.  The court mentioned approvingly that "by the date of the hearing [on the motion for a new scheduling order], the plaintiffs were prepared to

present not only the identity of the proposed expert, but his preliminary conclusions as well" and found that "[t]he presentation of Dr. Schreiber's preliminary reports was sufficient to put everyone concerned on notice that the subject matter of this proposed testimony would be different than that of the properly excluded testimony of Dr. Johnson." *Id*.  The court noted that "[t]he plaintiffs acted expeditiously in filing the motion for a new scheduling order and obtaining alternative medical testimony" and held that "*[u]nder these circumstances*, the district court's decision to deny plaintiffs' motion without affording plaintiffs an opportunity to develop the testimony and subject it to further *Daubert* analysis was improvident." *Id.* at 606 (emphasis added).  Those circumstances are not present in this case.  Although Plaintiff contends that he "can easily designate a new expert–one who already has familiarity with the scientific methodological issues and with the body of epidemiological literature and who has already survived *Daubert* challenges in similar cases," Pl. Mot. at 5, he has not provided the Court with any indication of who this witness might be or what the basis for the witness's testimony would be.  This is a fact-intensive case, and, to succeed, Plaintiff would have to find an expert to credibly opine not only on general causation, but also on specific causation, linking Prozac use to the unique facts of this case.  So while Plaintiff may be aware of a witness who has previously testified for another plaintiff in a Prozac-related case, this is a far cry from the circumstances that the *Summers* court found so compelling, where a report with preliminary conclusions was already presented to the court and defense.  Unlike *Summers*, in this case, the Court has nothing more to go on than Plaintiff's assurances that his new expert would succeed where his initial choice failed.

Fed. R. Civ. P. 16(b)(4) states that a scheduling order "may be modified only for good cause and with the judge's consent." That Plaintiff initially chose an expert whose methodology

6

the Court deemed unreliable does not constitute "good cause" to modify the scheduling order. *See Winters v. Fru-Con*, 498 F.3d 734, 743 (7th Cir. 2007)("The district court was not required to give [plaintiff] a 'do-over' by reopening discovery...."); *Pride v. BIC Corp.*, 218 F.3d 566, 578-79 (6th Cir. 2000)(affirming district court's refusal to modify scheduling order after the plaintiff's proffered expert testimony found to be inadmissible). This is especially true in this instance where the case is ripe for dismissal and where Plaintiff had adequate notice early on of the flaws in Dr. Jackson's report, flaws that the Court ultimately found precluded her testimony, and Plaintiff made no attempt to fix these flaws or to offer a substitute expert until it was too late. *See, e.g., Chaara v. Intel Corp.*, 2006 U.S. Dist. LEXIS 95383 at *13-14 (D. N.M. May 31, 2006)(good cause requires moving party to demonstrate that the deadlines in the scheduling order could not have been met even with sufficient diligence); Advisory Committee Notes to 1983 Amendment to Fed. R. Civ. P. 16(b) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.").

A review of the chronology of this case demonstrates that Plaintiff's motion is without merit. The parties filed a *Joint Motion to Extend Pre-trial Case Management Deadlines* [Doc. 15] on December 3, 2007. This motion, granted by the prior trial Court, extended the close of expert discovery to February 10, 2008, and gave the parties until March 6, 2008 to file *Daubert* motions. *See* Doc. 15. The deadline for *Daubert* motions was later extended to March 20, 2008. *See* Doc. 97. Plaintiff filed Dr. Jackson's expert witness report with Defendant on November 2, 2007. Defendant deposed Dr. Jackson for the first time on December 13, 2007. *See* Deposition of Dr. Grace Jackson (hereinafter "Jackson Depo."), attached as Ex. A to Defendant's Memorandum in Support of its Motion to Exclude Expert Testimony [Doc. 59], at 1. The

majority of the flaws in Dr. Jackson's report that the Court relied upon in excluding Dr. Jackson's testimony came to light during her initial deposition session.  Dr. Jackson's initial deposition session ended because of her claimed fatigue.  *See* Jackson Depo. at 221-222.  Her next deposition session with Defendant did not commence until February 11, 2008.  *See id*. at 226.  During that nearly two-month period, Plaintiff did not attempt to shore up his expert's report or to name a new expert, despite the flaws in Dr. Jackson's methodology that were evident in her report and that were exposed at her initial deposition.  Dr. Jackson's second deposition exposed further flaws in her report, but Plaintiff continued to rest his entire case on her reliability and his belief that the Court would allow her to testify.  Defendant filed its motion seeking to exclude Dr. Jackson's testimony on March 20, 2008.  Plaintiff's response did not address the legitimate criticisms leveled at Dr. Jackson's methodology, but instead relied on the fact that testimony by other experts using other methodologies had been admitted in other cases, and sought to bolster her report through argument of counsel and studies not relied upon by Dr. Jackson in completing her report.  Finally, when the prior trial Court held an evidentiary hearing on the *Daubert* issue on May 22, 2008, Plaintiff did not call Dr. Jackson to testify.[3]  Thus, Plaintiff had sufficient notice and opportunity to either establish the validity of his expert's methodology or to move for additional time to conduct expert discovery when the significant problems with Dr. Jackson's methodology became clear.  He did not do so, and cannot, at this

---

[3] In its opinion excluding Dr. Jackson from testifying at trial, the Court indicated its understanding that Plaintiff chose not to call Dr. Jackson to testify at the *Daubert* hearing.  *See* Doc. 151 at 33.  In his motion, Plaintiff claims that Dr. Jackson was available to testify at the evidentiary hearing but did not testify because neither the Court nor the Defendant had questions for her.  However, it is the Plaintiff's burden to establish the admissibility of expert testimony.  This hearing was his final chance to present evidence to rebut the attacks on his proposed expert's methodology, and he chose not do so.

stage, seek a "do-over."[4]

In his motion seeking an amended scheduling order, Plaintiff characterizes Dr. Jackson as "a novice expert making her maiden voyage into the perilous *Daubert* waters of expert witnessing," Pl. Mem. at 2, and concludes that "in retrospect, counsel should probably not have placed Dr. Jackson, who had no prior expert witness experience, in the position of having to write a Rule 26 report on such a short time leash." *Id*. at 5. However, as recognized by the Supreme Court, "[s]ince *Daubert*...parties relying on expert evidence have had notice of the exacting standards of reliability such evidence must meet. It is implausible to suggest, post-*Daubert*, that parties will initially present less than their best expert evidence in the expectation of a second chance should their first try fail." *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000). *See also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 897 (1990) ("[a] litigant's failure to buttress its position because of confidence in the strength of that position is always indulged in at the litigant's own risk."). Defendant has already spent untold resources analyzing Dr. Jackson's 57-page report and the nearly 50 references to scholarly articles and literature cited therein, preparing for two deposition sessions, preparing for the *Daubert* hearing, and preparing voluminous briefing on the *Daubert* issue. To require Defendant to go through this entire process again, bearing the cost of renewed expert discovery and briefing and losing the benefit of its initial significant efforts, simply because Plaintiff made a tactical choice that even he

---

[4] The fact that the prior trial Court, just prior to its recusal, admitted Dr. Jackson's testimony and that this Court's decision to exclude the testimony came months after the initial ruling creates an admittedly unusual situation. Nonetheless, a core principle still guides determination of this matter–the Rules of Civil Procedure simply do not automatically afford a party a second chance to find a new expert after its initial expert's testimony has been found inadmissible. The Court would have found Plaintiff's motion to seek to add a new expert untimely even if it had ruled at the time of the initial trial Court's ruling, September 29, 2008.

admits was ill-advised, would be fundamentally unfair to Defendant. Plaintiff's request for a second chance to get it right does not constitute "good cause" for a scheduling order modification, and his motion is therefore denied.

### B. Motion for Summary Judgment

Defendant's *Motion for Summary Judgment Based on Lack of Admissible Expert Testimony* [Doc. 67] is still pending, not because the Court decided on the merits not to grant it at the same time it granted Defendant's motion to exclude Dr. Jackson's testimony, but because of the Court's mistaken understanding that the motion had been denied by the prior trial Court and was not properly before this Court for reconsideration. Had the Court decided Defendant's motion for summary judgment in conjunction with its motion to exclude Dr. Jackson's testimony, Plaintiff's current motion would not have been possible. As even Plaintiff has admitted, "the exclusion of Plaintiff's sole expert witness sounds the death knell for Plaintiff's case" and, with the exclusion of Plaintiff's expert witness, "Plaintiff will not be able to continue." Pl. Mem. [Doc. 152] at 6. The grant of summary judgment to a defendant after the exclusion of expert testimony necessary to establish causation is routine. *See In re: Williams Securities Litigation-WCG Subclass*, 558 F.3d 1130, 1143 (10th Cir. 2009); *103 Investors I, L.P., v. Square D Co.*, 470 F.3d 985, 991 (10th Cir. 2006); *Truck Ins. Exchange v. MagneTek, Inc.*, 360 F.3d 1206, 1207-08 (10th Cir. 2004); *Miller v. Pfizer, Inc.*, 356 F.3d 1326, 1335 (10th Cir. 2004); *Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1216 (10th Cir. 2002); *Mitchell v. Gencorp, Inc.*, 165 F.3d 778, 784 (10th Cir. 1999). As in those cases, the exclusion of Plaintiff's expert witness in this case precludes him from being able to prove causation and necessitates granting Defendant's motion for summary judgment.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion for New Scheduling Order* [Doc. 152] is DENIED and that Defendant's *Motion for Summary Judgment Based on Lack of Admissible Expert Testimony* [Doc. 67] is GRANTED.

_____
JUDITH C. HERRERA
UNITED STATES DISTRICT JUDGE