## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MARK GILBERT RIMBERT, individually )
and as Personal Representative of the Estates )
of GILBERT JOHN RIMBERT, and )
OLIVIA ACOSTA RIMBERT, deceased, )
)
                    Plaintiff, )     **Case No.  CV-06-0874 JH/LFG**
)
       vs. )
)
ELI LILLY AND COMPANY, )
)
                  Defendant. )

## DEFENDANT ELI LILLY AND COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO RENEW DISPOSITIVE MOTIONS OR, IN THE ALTERNATIVE, TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL

### I.  INTRODUCTION

Defendant Eli Lilly and Company ("Lilly") respectfully moves this Court to renew Lilly's Motion for Summary Judgment on All Claims (Doc. No. 55) and Lilly's Motion for Summary Judgment Based on Federal Preemption (Doc. No. 19).

In the alternative, and pursuant to 28 U.S.C. § 1292(b), Lilly moves this Court for an Order certifying for interlocutory appeal to the United States Court of Appeals for the Tenth Circuit the Order denying Lilly's Motion for Summary Judgment Based on Federal Preemption.

### II.  PROCEDURAL BACKGROUND

On November 11, 2008, Lilly filed a motion to renew three dispositive motions: Lilly's Motion for Summary Judgment on All Claims (Doc. No. 55); Lilly's Motion to Exclude Expert Testimony of Dr. Grace Jackson (Doc. No. 58); and Lilly's Motion for Summary Judgment Based on Federal Preemption (Doc. No. 19).  *See* Doc. No. 136.  That motion was

fully briefed by both parties.  *See* Doc. Nos. 137, 139, and 140.  After exhaustively reviewing the motions, briefs, and legal precedent, this Court granted Lilly's Motion to Renew its *Daubert* motion, holding that "a successor court has the ability to reconsider the interlocutory orders of their predecessor on the same case."  Doc. No. 151 at 1-2.[1]  In a detailed and well-reasoned opinion, this Court granted Lilly's *Daubert* motion.  *See id*. at 40.  Plaintiff then moved for entry of a new scheduling order.  Doc. No. 152.  This Court denied that motion (Doc. No. 155) and entered final judgment in Lilly's favor.  Doc. No. 156.  Plaintiff then appealed to the Tenth Circuit.  Doc. No. 157.

The Tenth Circuit affirmed this Court's *Daubert* ruling, but reversed its ruling on Plaintiff's motion for a new scheduling order.  *Rimbert v. Eli Lilly and Co.*, 647 F.3d 1247, 1257 (10th Cir. 2011).  The Tenth Circuit declined to consider other grounds for affirming this Court's ruling, noting that "affirming on legal grounds not considered by the trial court is disfavored. […]  In these circumstances, it is best to allow the district court to consider the renewed motions in the first instance as it sees appropriate on remand."  *Id.* at 1256-57.  Accordingly, Lilly now requests this Court to review and consider its Motion for Summary Judgment on All Claims (Doc. No. 55) and its Motion for Summary Judgment Based on Federal Preemption (Doc. No. 19).  Such consideration can avoid the unnecessary expenditure of resources by the parties and this Court.

---

[1]     In its Order, this Court noted that it only turned its attention to Lilly's *Daubert* motion.  *See* Doc. No. 151 at 1.  Indeed, "[b]ecause the Court's ruling on the *Daubert* issue [was] potentially dispositive," the Court did not consider the other potentially dispositive motions. *Id.* at 2 n.1.

### III.  LEGAL AUTHORITY

### A.  Successor Judges in District Court Have the Authority to Reconsider Any Interlocutory Order Even without a Showing of Partiality or the Appearance of Partiality

As this Court noted, "a successor court has the ability to reconsider the interlocutory orders of their predecessor on the same case."  Doc. No. 151 at 7 (citing *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1225 (10th Cir. 2007) and *Wilson v. Merrell Dow Pharms.*, 160 F.3d 625, 628 (10th Cir. 1998)).  Courts have this ability even without a showing or appearance of bias.  *Wagoner v. Wagoner*, 938 F.2d 1120, 1122 n.1 (10th Cir. 1991) (explaining that a motion for reconsideration is "nothing more than an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment." (internal citation omitted)).  Indeed, "every order short of a final decree is subject to reopening at the discretion of the trial judge."  *Price v. Philpot*, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005) (*quoting Moses H. Cone Memorial Hosp. v. Mercury Constr.*, 460 U.S. 1, 12 (1983)).

This Court's authority to reconsider previous rulings is an inherent power that is also reflected in the Federal Rules of Civil Procedure.  *See Rimbert*, 647 F.3d at 1251 (citing Fed. R. Civ. P. 54(b) ("[A]ny order ..., however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties ... may be revised at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.")).  The decisions of the predecessor judge which Lilly asks this Court to reconsider are both interlocutory decisions.  As such, this Court has the inherent authority to revisit them.

Precedent from the Tenth Circuit, other circuits, and this Court shows that successor judges can reconsider and overrule the interlocutory orders of their predecessors in the

same case.  Indeed, a successor judge may grant summary judgment where the predecessor judge denied the motion, or may view a point of law differently than did the predecessor judge.  *See Rimbert*, 647 F.3d at 1251-52.  *See also Been*, 495 F.3d at 1225 (holding that successor judge did not violate the law of the case or abuse the district court's discretion when it reconsidered the ruling of the predecessor district court judge); *Wilson,* 160 F.3d at 628 (rejecting plaintiffs' argument that the law of the case foreclosed second district court judge from granting a motion for summary judgment where the first judge rejected the defendant's motion for summary judgment twice).[2]  This Court should do the same and consider Lilly's dispositive motions anew.

## B.  The Prior Orders Concerning Lilly's Motions for Summary Judgment Were in Error and Merit Reconsideration

This Court has the authority to revisit prior interlocutory decisions under nearly any circumstance, but reconsideration is most appropriate where the predecessor Court's initial decision was erroneous and would work manifest injustice.  *See Arizona v. California*, 460 U.S. 605, 618, n.8 (1983) (citation omitted).  As the Tenth Circuit has explained, "[w]hen a lower court is convinced that an interlocutory ruling it has made is substantially erroneous, the only sensible thing to do is to set itself right to avoid subsequent reversal."  *Major v. Benton*, 647 F.2d 110, 112 (10th Cir. 1981) (citation omitted).  *See also Peterson v. Lindner*, 765 F.2d 698, 704 (7th Cir. 1985) ("A trial judge should not court reversal because of the erroneous ruling of another judge any more than because of an erroneous ruling of his own.").

---

[2]      *See also U.S. v. Hively*, 437 F.3d 752, 766 (8th Cir. 2006) (rejecting argument that severance order was  the law of the case and that a successor judge could not overturn the decision made by predecessor district court judge); *Langevine v. District of Columbia*, 106 F.3d 1018, 1023 (D.C. Cir. 1997) (holding successor judge had authority to reconsider predecessor judge's order granting a new trial ); *Cale v. Johnson*, 861 F.2d 943, 948 (6th Cir. 1988) (explaining that a successor judge in a district court can grant summary judgment where his predecessor has denied the motion and stating that "the district court does not have to rely on new evidence; if the demands of justice require, it may simply change its mind.")

Adherence to the erroneous decisions denying Lilly's motions will prolong this litigation and expend additional resources of the parties and the Court.   Lilly respectfully contends that the Order denying Lilly's Motion for Summary Judgment on All Claims was wrongly decided and warrants reconsideration.   Although the Order denying Lilly's Motion for Summary Judgment Based on Federal Preemption is not supported by an opinion from the previous District Court, Lilly respectfully submits that it too was wrongly decided and merits reconsideration.   Moreover, this Court has recently ruled that when "a district court…makes a decision without providing reasons, [it] abuses [its] discretion." *Salazar v. City of Albequerque*, 2011 WL 2433325 at *3 (D.N.M. June 10, 2011) (Browning, J.).

**1.   The Learned Intermediary Doctrine Has Been Adopted in New Mexico.**

In denying Lilly's Motion for Summary Judgment on All Claims, the previous District Court disregarded precedent from New Mexico's appellate courts and predicted that the Supreme Court of New Mexico would not recognize the learned intermediary doctrine. Doc. No. 112 at 1.   In predicting that the Supreme Court of New Mexico would not recognize this well-established doctrine, the previous District Court specifically acknowledged that there are three controlling New Mexico Court of Appeals cases on this issue, but simply declined to follow those decisions.[3]   *See* Doc. No. 112 at 60.   *See also Serna v. Roche Labs.*, 684 P.2d 1187, 1189 (N.M. Ct. App. 1984) (applying the learned intermediary doctrine); *Perfetti v. McGhan Med.*, 662 P.2d 646, 649 (N.M. Ct. App. 1983) (accord); *Hines v. St. Joseph's Hosp.*, 527 P.2d 1075,

---

[3]      Under such circumstances, Tenth Circuit precedent requires that relevant rulings of the intermediate appellate courts should govern.  *See Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007) ("If there be no decision by [the state's highest] court then federal authorities ***must apply what they find to be the state law after giving proper regard to relevant rulings of other courts of the State***." (internal citations omitted) (emphasis added)). *See also Clay v. Sun River Mining Co.*, 302 F.2d 599, 602 (10th Cir. 1962) ("An intermediate state court in declaring and applying the state law is acting as an organ of the State and its determination, in the absence of more convincing evidence of what the state law is, ***should be followed by a federal court*** in deciding a state question." (emphasis added)).

1077 (N.M. Ct. App. 1974).  The previous District Court reached this conclusion despite the Tenth Circuit's observation that "[f]orty-four other jurisdictions have adopted the learned intermediary doctrine in prescription medicine cases." *Thom v. Bristol-Myers Squibb Co.,* 353 F.3d 848, 852 (10th Cir. 2003).  Indeed, thirteen other jurisdictions analyzing the learned intermediary doctrine, including the Fifth Circuit Court of Appeals and four state supreme courts, have determined that New Mexico law recognizes and applies the doctrine.[4]

In making this prediction, despite the existence of controlling New Mexico authority and despite widespread acceptance of the learned intermediary doctrine, the previous District Court joined the West Virginia Supreme Court as the only court to specifically reject the doctrine outright.  *See State ex. rel Johnson and Johnson Corp. v. Karl*, 647 S.E.2d 899 (W. Va. 2007).  This decision's status as an extreme outlier, and the previously-assigned Judge's refusal to follow governing opinions from the New Mexico Court of Appeals, justify reconsideration of Lilly's Motion.[5]  *See Gooding v. Wilson*, 405 U.S. 518, 526 n.3 (1972) (finding that federal courts follow decisions of the Georgia Court of Appeals, which has statewide jurisdiction and the

---

[4]     *See McPherson v. Searle Labs, Inc.*, 888 F.2d 31, 33 n.5 (5th Cir. 1989), *vacated by*, 904 F.2d 251; *Breen v. Synthes-Stratec*, Inc., 947 A.2d 383, 388 n.5 (Conn. Ct. App. 2008); *Beale v. Biomet, Inc.*, 492 F. Supp. 2d 1360, 1367-8 (S.D. Fla. 2007); *Larkin v. Pfizer, Inc.*, 153 S.W.3d 758, 767 n.3 (Ky. 2004); *Bean v. Baxter Healthcare Corp.*, 965 S.W.2d 656, 663 (Tex. Ct. App. 1998); *In re Norplant Contraceptive Prods. Liab, Litig.*, 215 F. Supp. 2d 795, 807 (E.D. Tex. 2002); *Polley v. Ciba-Geigy Corp.*, 658 F. Supp. 420, 421 (D. Alaska 1987); *Vitanza v. Upjohn Co.*, 257 Conn. 365, 379 n.11 (Conn. 2001); *Terhune v. AH Robins Co.*, 577 P.2d 975, 977 (Wash. 1978); *McKee v. Moore*, 648 P.2d 21, 25 (Okla. 1982); *Ortho Pharm. Corp., v. Chapman*, 388 N.E.2d 541, 548 (Ind. Ct. App. 1979); *Jones v. Sportelli*, 399 A.2d 1047, 1050 (N.J. Super. Ct. Law Div. 1979); *Pierluisi v. ER Squibb & Sons, Inc.*, 440 F. Supp. 691, 694 n.10 (D.P.R. 1977).

[5]     The previous District Court's opinion on this point has been cited unfavorably by two different federal district courts.  *See Schilf v. Eli Lilly and Co.*, 2010 WL 4024922 at *2 (D.S.D. Oct. 13, 2010) and *In re Trasylol Prods. Liab. Litig.*, 2011 WL 2586218 at *4 n.11 (S.D. Fla. June 23, 2011).  The *In re Trasylol* court, in the face of the *Rimbert* opinion, stated that it "**must** follow the controlling decisions of the New Mexico Court of Appeals where…the Supreme Court of New Mexico has not decided whether New Mexico law recognizes the doctrine," concluding that the New Mexico Court of Appeals had indeed adopted the learned intermediary doctrine.  *In re Trasylol*, 2011 WL 2586218 at *4 (emphasis added) (citing *Gooding v. Wilson*, 405 U.S. 518, 526 n.3 (1972)); *id.* at *4 n.11.

decisions of which are "binding upon all trial courts [in Georgia] in the absence of a conflicting decision of the Supreme Court of Georgia").

### 2. Plaintiff's Claims Are Preempted by FDA Regulation.

This Court should also reconsider Lilly's Motion for Summary Judgment Based on Federal Preemption because the previous District Court's Order on that Motion is inconsistent with United States Supreme Court precedent in *Wyeth v. Levine*, 129 S. Ct. 1187 (2009), and is squarely at odds with the ruling of another federal district court in this circuit.   *See Dobbs v. Wyeth Pharm.*, 2011 WL 2746321 (W.D. Okla. June 13, 2011) (attached).

#### a. *Dobbs v. Wyeth Pharm*.

In *Dobbs*, a case strikingly similar to this case, the plaintiff sued a drug manufacturer to recover damages resulting from the 2002 suicide of her 53-year-old husband. 2011 WL 2746321 at *1.  The plaintiff alleged that her husband committed suicide as a result of taking Effexor, an antidepressant manufactured by Wyeth.  *Id.*  Though Effexor came with FDA-approved labeling, including a statement regarding suicidality in patients diagnosed with depression, the plaintiff contended that the warning was inadequate to warn of the alleged risk of suicide.  *Id.*  After analyzing a regulatory history virtually identical to the one in this case, *compare id.* at *5-10 *with* Doc. No. 20 at 5-14, the *Dobbs* court noted that the history was "significant" for two reasons.  *Dobbs*, 2011 WL 2746321 at *10.  First, the history of SSRI antidepressants and the continual monitoring of the possible risk of suicidality by both manufacturers and FDA, stood in sharp contrast to the facts of *Levine*, in that the FDA "gave more than passing attention" to antidepressants and a supposed link to suicidality.  *Id.*  Second, "despite the ongoing analyses from as early as 1993 through 2007, the FDA has yet to find

scientific evidence to support the addition of a suicidality warning for patients in Mr. Dobbs's age group." *Id.* Both points apply with equal force in this case.

In finding plaintiff's claims preempted, the court noted that "the FDA retains the authority to reject and require the manufacturer to remove such CBE label revisions where the risk, contraindication, or related alteration is not supported by 'reasonable evidence of an association' with the prescription drug." *Id.* at *6 (citing 21 C.F.R. § 201.57(c)(6)(I). The court further observed that "the lengthy regulatory history of SSRIs reflects the FDA's refusal to enhance such warnings without scientific evidence, as well as its reluctance to consider a warning which it believed might reduce the use of antidepressants and thereby undermine the benefits of their use in treating depression." *Id.* at *11. Even more important to that court was the fact that the FDA has repeatedly refused to extend suicidality warnings to adult patients over the age of 25. *Id.* at *12. Relying on an evidentiary record similar to the record in this case, the *Dobbs* court ultimately held that "there [was] clear evidence that the FDA would have rejected an expanded Effexor warning for patients in Mr. Dobbs's age group prior to his 2002 suicide."[6] *Id.* Thus, the plaintiff's failure-to-warn claims were preempted. *Id.* at *15. The same result should follow here.

### b. The Supreme Court's Decision in *Wyeth v. Levine* Supports a Finding of Preemption in This Case.

The United States Supreme Court in *Wyeth v. Levine* held that it would not conclude that it was impossible for Wyeth to comply with both federal and state requirements in the absence of clear evidence that FDA would not have approved a change to Phenergan's label.

---

[6]     The *Dobbs* court also stated that "[i]n fact, [the FDA] continued to conclude that there was no evidence to support a warning for [Mr. Dobbs'] age group as late as 2007, after additional studies were completed." *Dobbs*, 2011 WL 2746321 *12. In the present case, Gilbert Rimbert was 68 years old and the FDA's stated conclusion - and mandatory language on antidepressant labels - is that antidepressants have a *protective effect against suicidality* in patients 65 and older.

*Levine*, 129 S. Ct. 1187, 1198 (2009).  Wyeth offered no such evidence, *id.*, and the Supreme

Court noted that "FDA did not consider and reject a stronger warning."  *Id.* at 1203 n.14.

Instead, the Supreme Court cited to the trial court's finding that FDA gave no more than passing

attention to the proposed warning, and further cited to the Vermont Supreme Court's conclusion

that "the FDA had not made an affirmative decision to preserve the IV-push method or intended

to prohibit Wyeth from strengthening its warning about IV-push administration."  *Id.* at 1199.

In contrast, this case presents the very facts the Supreme Court found lacking in

*Levine.*  It is undisputed that:

- FDA issued a Talk Paper on July 31, 1990, which stated: "on the evidence currently available, there appears to be no basis to conclude that the use of Prozac® is associated with any unreasonable or unexpected risk." Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment Based on Federal Preemption ("Statement of Undisputed Facts"), Doc. No. 20 at 6 ¶ 7.

- In 1991, the Psychopharmacological Drugs Advisory Committee ("PDAC") unanimously agreed there was no credible evidence of an increased risk of suicide and Prozac®.  *Id.* at 7 ¶ 11.

- In 1991 and 1992, FDA denied two citizen's petitions seeking warnings regarding increased risk for suicide and SSRI antidepressants based on no evidence of such  a causal relationship.  *Id.* at 6 ¶ 8, 7 ¶ 13.

- In 1997, FDA again denied a citizen's petition to include a warning regarding suicide and Prozac®.  *Id.*  at 8 ¶ 14.

- On June 19, 2003, **three months prior to decedent's death**, FDA stated there was no causal relationship between Paxil (another SSRI) and suicide based on an extensive analysis of data from post-market studies.  *Id.* at 9 ¶ 20.

- In 2004, FDA's Director of the Office of Medical Policy testified before Congress that FDA researchers evaluating adult data from controlled trials found no increase in suicidality or completed suicide in adult patients on antidepressants as compared to those on placebo.  *Id.* at 11-12 at ¶¶ 27-28.

- On May 1, 2007, FDA sent a letter to Lilly stating that "[c]hanges are also needed to inform practitioners about an apparent favorable effect of antidepressants on suicidality in older adults…."  *Id.* at 14 ¶ 35.

- 9 -

■ The current FDA-mandated label for Prozac® and other antidepressants states the following in the black box warning:

> Suicidality and Antidepressant Drugs. . . Short-term studies *did not show an increase in the risk of suicidality with antidepressants compared to placebo in adults beyond age 24; there was a reduction in risk with antidepressants compared to placebo in adults aged 65 and older.* Depression and certain other psychiatric disorders are themselves associated with increases in the risk of suicide. . . . *Id.* at 14 ¶ 36. (emphasis added).

The FDA clearly gave "more than passing attention" to warning language related to suicidality in the labeling of antidepressant medications.  As outlined above and in greater detail in Lilly's underlying summary judgment filings, in the twenty years since the approval of Prozac®, FDA has several times specifically considered the claim that Prozac® causes or increases the risk of suicidality or violence in adults.  In addressing this specific issue and in reaching its conclusions, FDA requested data relevant to the question, closely analyzed it, and conducted public hearings to consider various opinions.  *Id*. at 6-9 ¶¶ 6-20.

It is also undisputed that FDA "made an affirmative decision" with respect to such warnings prior to decedent's death.  *See Levine*, 129 S. Ct. at 1199.  Each time FDA considered and decided this very issue, it concluded that the warnings advocated by Plaintiff are not based on reliable scientific evidence and rejected the need for such a labeling change with respect to adults.  Doc. No. 20 at 6-9 ¶¶ 6-20.  Moreover, the current FDA-mandated label provides additional evidence that FDA would not approve an adult suicidality warning – the label specifically states that there is no increase in the risk of suicide in adults over age 24 from the use of antidepressants and that there is a reduction in risk with antidepressants compared to placebo in adults, like decedent was, aged 65 and over.  *Id*. at 14 ¶¶ 35-36.  These facts fit squarely within the conflict or impossibility defense outlined in *Levine*, and, thus, Lilly's Motion for Summary Judgment on the Basis of Preemption should be renewed.

### C. In the Alternative, Lilly Asks This Court to Certify the Previous District Court's Order on Federal Preemption for Interlocutory Appeal Pursuant to 21 U.S.C. § 1292

#### 1. Applicable Legal Standard

"Under [21 U.S.C. § 1292], a district court may certify for appeal an otherwise unappealable interlocutory order if the court determines that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Homeland Stores, Inc. v. Resolution Trust Corp.*, 17 F.3d 1269, 1271 (10th Cir. 1994) (internal quotes omitted).  In *Certain Underwriters at Lloyd's London, Subscribing to Policy Number 501/NM03ACMB v. Nance*, this Court clarified the appropriate standard for certifying orders for interlocutory appeal pursuant to 21 U.S.C. § 1292.  2006 WL 4109675 (D.N.M. Aug. 24, 2006) (Browning, J.).  This Court explained that certification is appropriate when the order "has reference to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *Id.* (quoting *Ahrenholz v. Bd. Of Trs. Of the Univ. of Ill.*, 219 F. 3d 674, 676 (7th Cir. 2000).  The Court also noted that certification is typically appropriate when the order involves "law that is unsettled" and explained that "district courts should certify questions where they are unsure what the law is." *Id.*

#### 2. This Court Should Certify The Order Denying Lilly's Motion For Summary Judgment Based On Federal Preemption For Interlocutory Appeal.

On October 2, 2008, the previous District Court denied Lilly's Motion for Summary Judgment Based on Federal Preemption.  As this Order involves controlling, unsettled questions of law as to which there is substantial ground for difference of opinion, and because it involves a potentially case-dispositive legal issue, an immediate appeal may materially advance

the ultimate termination of the litigation.   Accordingly, certifying this Order for immediate appeal is proper under 21 U.S.C. § 1292(b).

Certification of the Order on Lilly's Motion for Summary Judgment Based on Federal Preemption is particularly appropriate given the procedural history of preemption decisions in this circuit.  The Tenth Circuit had vacated and remanded two preemption decisions of other district court's in this circuit in light of the "clear evidence" standard of *Wyeth v. Levine*. *See Miller v. Smithklline Beecham Corp.*, 381 Fed. Appx. 776, 778 (10th Cir. 2010), *vacating* 2008 WL 510449 (N.D. Okla. Feb. 15, 2008); *Dobbs v. Wyeth Pharms.*, 606 F.3d 1269, 1270-71 (10th Cir. 2010), *vacating* 530 F. Supp. 2d 1275 (W.D. Okla. 2008).  On remand, as noted above, the *Dobbs* court found such "clear evidence" under *Wyeth v. Levine* and again found that plaintiff's claims were preempted.  *Dobbs*, 2011 WL 2746321 at *15.  Given such background on the issue of preemption, and in an effort to avoid the unnecessary expenditure of resources by the parties and this Court, Lilly respectfully requests the Court to certify this potentially case-dispositive issue for interlocutory appeal and stay these proceedings pending the Tenth Circuit's decision as to whether to accept the appeal.

## IV.  CONCLUSION

Lilly respectfully requests that the Court consider anew the previous District Court's Orders denying Lilly's Motion for Summary Judgment on All Claims (Doc. No. 55), and Lilly's Motion for Summary Judgment Based on Federal Preemption (Doc. No. 19) in order to avoid the unnecessary expenditure of resources by the parties and this Court.

In the alternative, Lilly respectfully requests that the Court amend the Order denying Lilly's Motion for Summary Judgment Based on Federal Preemption to certify that Order for interlocutory appeal to the United States Court of Appeals for the Tenth Circuit.

Additionally, Lilly requests that the Court stay the proceedings while the interlocutory appeal is pending in the Tenth Circuit.

Respectfully submitted,

**RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.**

By:    /S/ Thomas A. Outler
P.O. Box 1888
Albuquerque, NM 87103-1888
Tel:    505-765-5900
Fax:   505-768-7395

**SHOOK, HARDY & BACON LLP**
Andrew See
Julia Walker
2555 Grand Boulevard
Kansas City, MO 64108
Tel:    816-474-6550
Fax:   816-421-5547

***Attorneys for Defendant Eli Lilly and Company***

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2011, I electronically filed the foregoing pleading through the CM/ECF system, which caused all counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By:    /S/ Tom Outler